IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE DAUGHERTY, #R-01171  **Plaintiff,**  v.  MICHAEL DURBIN and MICHAEL PADILLA,  **Defendants.** | Case No. 17-cv-00809-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment (Doc. 135) filed by Defendants Michael Durbin ("Durbin") and Michael Padilla ("Padilla"). For the reason's set forth below, the Court denies the Motion for Summary Judgment.

## PROCEDURAL HISTORY

On July 12, 2017, plaintiff Terrance Daugherty ("Daugherty") filed his complaint pursuant to 42 U.S.C. § 1983 in the U.S. District Court for the Central District of Illinois (Doc 1). On July 18, 2017, Daugherty's case was transferred to this district via text order (Doc. 6). Venue for federal civil rights actions brought under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b), which states they may only be brought in: (1) the judicial district where any defendant resides; (2) a judicial district in which a substantial part of the events or omissions giving rise to the incident occurred; or, (3) a judicial district in which defendant may be found, if there is no district in which the action may otherwise be brought. Because the allegations contained in the complaint

occurred at Big Muddy Correctional Center ("Big Muddy") and the defendants work at Big Muddy, which is located in the Southern District, the interests of justice supported transfer and this venue is clearly appropriate.

On September 25, 2017, a merit review was conducted pursuant to 28 U.S.C. § 1915A (Doc. 14). At that time, the Court determined that Daugherty could proceed on the following two counts: (1) On June 23, 2015, John Doe 1 used excessive force on plaintiff by nearly throwing him over a guard rail, kneeing his back, forcing him to walk in a degrading and uncomfortable position, and dragging his face on the concrete without justification, in violation of the Eighth Amendment; and, (2) On June 23, 2015, John Doe 2 used excessive force on plaintiff by forcing him to walk in a degrading and uncomfortable position, kneeing his back, and dragging his face on the concrete without justification, in violation of the Eighth Amendment (*Id.*).

On October 4, 2017, Lieutenant Michael A. Durbin ("Durbin") was substituted in place of John Doe 1 and Officer Michael E. Padilla ("Padilla") was substituted in place of John Doe 2 (Doc. 18). On June 18, 2018, an amended complaint was filed against Durbin and Padilla, asserting the excessive force claim from June 23, 2015, as well as state law claims for assault and battery (Doc. 75).

On October 26, 2020, Durbin and Padilla filed their motion for summary judgment asserting affirmative defense of qualified immunity with respect to the excessive force claim, and the defenses of sovereign immunity and public official immunity regarding the state claims of assault and battery (Doc. 136). On November 30, 2020, Daugherty filed his response, arguing that there were genuine disputes of material facts and that Durbin and Padilla were not entitled to any affirmative defense

(Doc. 137). On December 14, 2020, Durbin and Padilla filed their reply, focusing on the testimony of Daugherty's cellmate, Felton Williams ("Williams"), and contesting that there were any undisputed material facts (Doc. 138).

## STATEMENT OF FACTS[1]

On June 23, 2015, Daugherty was incarcerated in the Illinois Department of Corrections and was an inmate at Big Muddy (Doc. 136, ¶ 1). Daugherty is a 38 year old male with mental health diagnoses that can cause depression, anxiety and hallucinations (Doc. 137, ¶20). On June 23, 2015, he was involved in a "brutal" fight with his cellmate, Felton Williams[2] (*Id.*, ¶ 2). Daugherty advised the fight was 5-6 minutes and ended because they "fought so brutally they were exhausted" (Doc. 136-1, p. 16). Following the fight, Daugherty was "extremely hurt" and his lip was split open and bleeding badly; his arms were pretty threw out; his legs were sore from wrestling; his knuckles were hurting; and, his face and head were pounding (*Id.*, pp. 15-16). The wing officer responded to the panic button, assessed the situation, called a 10-10, and prepared a report noting bleeding injuries to Daugherty and indicating that he had to push himself against the wall to stand (Doc. 136, ¶ 4).

Padilla has been a correctional officer since 2014 and responded to the 10-10 call and waited for Durbin to arrive (Doc. 136, ¶ 5). Durbin gave Daugherty and his cellmate Williams three direct orders to cuff up because they were going to segregation (Doc. 136, ¶ 6). Daugherty did not follow the first or second order and wanted Durbin to come into

---

[1] In an effort to exclude immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the briefs and exhibits provided by the parties herein. Plaintiff has attempted to articulate statements made by Felton Williams as uncontested facts; however, many of those statements directly contradict Daugherty's own testimony and have minimal evidentiary support or corroboration.
[2] Daugherty testified via deposition on June 19, 2019, at which time he stated, "After a brutal fight between me and my cellie …". (Doc. 136-1, p. 14).

the cell (Doc. 136, ¶¶ 8-9). Daugherty started to comply, but he was pulled out of his cell and made to face the wall before being handcuffed (Doc. 136, ¶ 9). Daugherty "tried to pull away" and "jerked away from him [Durbin]," but was "pulled back from the chains" of the handcuffs (Doc. 136, ¶10). Daugherty was made to stand erect while his head was pushed down, and he was walked down the stairs (*Id.*).

Daugherty was escorted out of the cell block by Durbin and Padilla (*Id.*). He collapsed a few times on the walk and had to be brought to standing position before walking again (Doc. 136, ¶11). When Daugherty arrived at the infirmary, he was examined by nurse Donna Durbin (Doc. 136, ¶12). Nurse Durbin writes what she is told by the inmate, and in this case wrote, "My cellie hit me" (Doc. 136, ¶13). Nurse Durbin wrote that Daugherty had a laceration to his upper lip and abrasions to the back of his left arm, to the middle of back, to the right arm and to the upper elbow (Doc. 136, ¶14). Daugherty refused to have his lip repaired by Dr. Larson (*Id.*). The doctor indicated he reviewed the report and requested Daugherty follow up as needed, but no further treatment was received (Doc. 136, ¶15). Daugherty was taken to a segregation cell after the infirmary (Doc. 136, ¶16).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id.* (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of

the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

In deciding the motion, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, choose between competing inferences or determine the ultimate truth 0of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCottrell v. White*, 933 F.3d 651, 657 (7th Cir. 2019). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). It must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *McCottrell,* 933 F.3d at 658.

## ANALYSIS

In this case, the motion for summary judgment focuses on whether any force was used against Daugherty, and if so, whether that force was considered excessive (Doc. 135). Daugherty claims that after a fight with his cellmate, he was aggressively escorted out of his cell and beaten until handcuffed, almost thrown over a guard rail outside his cell, aggressively escorted (dragged on concrete) out of the building in a degrading and uncomfortable manner, as well as being punched, kicked and kneed multiple times by Durbin and Padilla (Doc. 137). In support of his contentions, Daugherty relies upon his own deposition testimony, as well as that of his former "cellie", Felton Williams (*Id.*). To the contrary, defendants claim Daugherty was injured in his fight with his cellmate before being escorted and assisted from his housing unit to the infirmary (Doc. 135). They claim all of Daugherty's injuries were sustained in the fight, and they deny using any force against him (*Id.*).

It is undisputed that Daugherty and Williams engaged in a fight on June 23, 2015. It is further undisputed that Daugherty sustained injuries in the fight – the wing officer saw Daugherty standing at the door bleeding and noted in his report that Daugherty indicated he had a fight with William (Doc. 137-4). Daugherty himself testified that he was "extremely hurt" and that his "lip was split open", his arms were "pretty threw out" and his "legs were pretty sore from wrestling" (Doc. 136-1, pp. 15-16). Daugherty even disobeyed Durbin's first two direct orders to "cuff up", but that is when the aftermath of the fight diverges into two distinct theories (Doc. 136-1, pp. 35, 36). In both scenarios, Daugherty was escorted by Durbin and Padilla to the infirmary, but the how remains disputed and remains a question of fact for jury to decide.

Once at the infirmary, Nurse Durbin noted a laceration to Daugherty's upper lip, and abrasions to the back of his left arm, to the middle of his back and to his upper arm. However, she was not present at the fight, and other than noting that Daugherty said, "My cellie hit me", she does not know if all of the injuries were from the fight. Furthermore, even if there were no discernable injuries other than what Daugherty received in the fight, that is not dispositive to the question of whether excessive force was used. In fact, the Supreme Court, holds that pain, not injury, is the barometer by which we measure claims of excessive force. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

I.   **Excessive Force**

The Eighth Amendment does not forbid every use of force against a prisoner; it only forbids the wanton infliction of pain. *Whitley v. Albers,* 475 U.S. 312, 319-320 (1986). Use of force is constitutional if it is part of a good-faith effort to restore discipline. *Id.* In fact, once accused of using excessive physical force in violation of the cruel and

unusual punishment clause, the core judicial inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (citing *Whitley,* 475 U.S. at 327). According to Webster's Dictionary, maliciously means having or showing a desire to cause harm to someone, while sadistically means taking pleasure in the infliction of pain.[3]

Corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates and other officers. *Whitley v. Albers,* 475 U.S. 315, 320 (1986). Both situations may require prison officials to act quickly and decisively. *Id.* Likewise, both implicate the principle that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–322, 106 S.Ct., at 1085(quoting *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)).

The determination that force was excessive depends upon the circumstances. *Richman v. Sheahan,* 512 F.3d 876, 883 (7th Cir. 2008). Use of force is contrary to the Eighth Amendment if it is excessive under objective standards of reasonableness; however, that alone is not enough. *Saucier,* 533 U.S. at 202. Indeed, not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates the Eighth Amendment. *Graham v. Connor,* 490 U.S. 386 (1989). Determining whether [an officer] was acting in good faith depends on whether they reasonably felt that their safety or the safety of other inmates was threatened, whether there was a genuine need

---

[3] *See* www.merriam-webster.com/dictionary

to use force and whether the amount of force used corresponded to that need. *See Rice v. Correctional Med. Servs.,* 675 F.3d 650, 667-668 (7th Cir. 2012).

In this case, Daugherty admittedly refused to comply with two orders to "cuff up"; however, he was ultimately handcuffed before being escorted to the infirmary. Once Daugherty was in handcuffs, is it reasonable for an officer to believe that his safety or that of other inmates is still threatened? Assuming the facts in Daugherty's favor, this Court believes there are questions of fact for a jury to determine whether force was used by the officers, and whether said force was reasonable or excessive under the circumstances.

## II.   Qualified Immunity

Defendants assert that if they used excessive force, they are entitled to the defense of Qualified Immunity (Doc. 136, pp. 9-10). The inquiry as to whether officers are entitled to qualified immunity for the use of excessive force is distinct from the inquiry on the merits of the excessive force claim. *Saucier v. Katz,* 533 U.S. 194 (2001).

The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). In this case, *if* Daugherty's allegations are true which is presumed at the summary judgment stage, then the Court must determine if the right to be free from cruel and unusual punishment was clearly established. *Saucier,* 533 U.S. 194, 201 (2001). Qualified immunity applies unless the official's conduct violated such a right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, we can dismiss the case on summary judgment only if we find that the right that Durbin and Padilla allegedly violated was not clearly established at the time of the purported misconduct. *See*

*v. McGowan,* 957 F.2d 345, 350 (7th Cir.1992). To the contrary, the right to be free from cruel and unusual punishment is guaranteed under the Eighth Amendment. As such, questions of fact remain making summary judgment inappropriate at this time.

### III. State Claims and Immunities

In addition to his federal excessive force claims, Daugherty has asserted state law claims of assault (Count II) and battery (Count III) (Doc. 76). Durbin and Padilla argue they are immune from these claims under relevant Illinois immunities law, including state-law sovereign immunity and public official immunity (Doc. 136). For the following reasons, the court denies both of these arguments as well.

#### A. State-Law Sovereign Immunity

In general, Illinois is protected against civil suits in federal court by two relevant doctrines, both of which are referred to as "sovereign immunity". *Benning v. Board of Regents of Regency Universities,* 928 F.2d 775, 777 (7th Cir. 1991). The sovereign immunity statute protects the State against being "made a defendant or party in any court". 745 ILCS 5/1. Because naming state employees as defendants would be too simple an evasion of the statute, a substantial body of Illinois case law addresses when and under what circumstances the immunity statute applies to claims against state employees. See *Benning,* 928 F.2d at 779–80.

However, there is an important exception to sovereign immunity that obviates the need to go through the circumstances when the immunity statute applies. *Murphy v. Smith,* 844 F.3d 653, 658 (7th Cir. 2016). Specifically, if the plaintiff alleges that state officials or employees violated "statutory or constitutional law", sovereign immunity offers no protections. *Healy v. Vaupel,* 549 N.E.2d 1240, 1247 (Ill. 1990).

In *Murphy,* plaintiff was an inmate at Vandalia CC when he was hit in the face while being escorted to segregation. 844 F.3d 653 (7th Cir. 2016). Murphy sued under 42 U.S.C. §1983 and also alleged state-law theories. *Id.* The defendant correctional officers argued that state-law sovereign immunity barred the state-law claims. *Id.* Murphy alleged and proved that defendants violated the U.S. Constitution and also proved the Illinois criminal offense of aggravated battery. *Id.* The Seventh Circuit held that sovereign immunity did not bar the state law claims because Murphy proved defendants acted "in violation of statutory or constitutional law." *Id.*

Similarly, in this case, Daugherty has alleged violations of the U.S. Constitution, specifically the Eighth Amendment, along with the Illinois claims of assault and battery (Doc. 76). Whether defendants' conduct was in violation of the Eighth Amendment remains a jury question, and as such, defendants are not entitled to summary judgment at this time.

### B. Public Official Immunity

Public official immunity is a common law doctrine that dictates public officials are immune from individual liability for "the performance of discretionary duties performed in good faith" and "unique to the particular public office." *Currie v. Lao,* 592 N.E.2d 977, 984 (Ill. 1992); *Kinzer v. City of Chi.*, 539 N.E.2d 1216, 1220 (Ill. 1989). Defendants argue that they are entitled to public official immunity on the state-law tort claims because they were performing discretionary acts that are authorized by law and that Daugherty's allegations fail to rise beyond the scope of public official immunity (Doc. 136). The Court rejects Defendants' argument. The evidence before the Court establishes issues of material fact as to whether they performed their duties in good

faith. Thus, the Court denies the motion for summary judgment based on public official immunity

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**

**DATED: July 7, 2021**

> **/s/ Stephen P. McGlynn**
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**